IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 1, 2025 Session

**IN RE: TENNESSEE BONDING COMPANY, INC.,
d/b/a ACTION BAIL BONDING**

**Appeal from the Circuit Court for Madison County
Nos. C-23-185, C-23-189      Donald H. Allen, Judge**

_____

**No. W2024-01063-CCA-R3-CD**

_____

Tennessee Bonding Company, Inc., d/b/a Action Bail Bonding ("the Bonding Company"), appeals from the trial court's denial of its petitions to obtain bonding privileges in the Twenty-Sixth Judicial District. The Bonding Company contends that (1) the trial court improperly held a hearing without counsel present, (2) the trial court erroneously considered certain evidence without the required necessary authentication or identification in violation of the Rules of Evidence, and (3) the evidence did not support the trial court's denial of approval to write bonds. After review, we affirm.

**Tenn. Code Ann. § 40-11-125(d) Appeal; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TOM GREENHOLTZ, JJ., joined.

Cayley J. Turrin, Franklin, Tennessee, for the appellant, Tennessee Bonding Company, Inc., d/b/a Action Bail Bonding.

Jonathan Skrmetti, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Jody S. Pickens, District Attorney General; and Matthew Floyd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.      FACTUAL AND PROCEDURAL HISTORY

On July 12, 2023, the Bonding Company and its agents, Brian Cole, Kenneth Holmes, and Jessica Cerniglia, petitioned the Madison County Circuit Court for approval to write bonds in the Twenty-Sixth Judicial District at a capacity of fifty million dollars.

The petition indicated that Mr. Cole and Mr. Holmes maintained "a financial or managerial interest" in the Bonding Company and that, in accordance with Tennessee Code Annotated section 40-11-317, affidavits from each agent were attached thereto. Separately, Ms. Cerniglia filed a petition with the trial court on July 14, 2023, seeking approval for her to write bail bonds as an agent of the Bonding Company. This petition also indicated that Ms. Cerniglia would submit the required documentation. Additionally, various certificates for each of the Bonding Company's agents reflecting compliance with continuing education requirements were attached to these petitions. *See* Tenn. Code Ann. § 40-11-402.

The first hearing held on these petitions took place on November 27, 2023. At the outset of the hearing, the trial court said that it would "hear whatever proof" the Bonding Company had to offer. Counsel for the Bonding Company indicated that it was content to "rely on [its] petition[s,]" but noted that the co-owners of the Bonding Company, as well as Ms. Cerniglia, were present in the courtroom if the trial court had any questions for them. The trial court indicated that it wanted to hear from both owners of the Bonding Company.

Mr. Cole was placed under oath and testified that he was the president and co-owner of the Bonding Company, which was headquartered in Knox County. Mr. Cole said that he had worked in the bonding industry for thirty years and had no criminal history. Mr. Cole denied that he had "any civil judgments" entered against him or that he had "ever declared bankruptcy."

Mr. Cole stated that Action Bail Bonding, which was headquartered in Covington, was a subsidiary of the parent company, Tennessee Bonding Company, Inc., and that it maintained a local office in Madison County. According to Mr. Cole, the Bonding Company had multiple agents writing bonds in various judicial districts throughout the state, in both the name of the parent and its subsidiaries. Mr. Cole maintained that the Bonding Company filed the required semiannual reports in the judicial districts where it was approved to write bonds.

Then, Mr. Holmes, also a co-owner of the Bonding Company, stated under oath that he had worked in the bonding industry for approximately twelve years and had no criminal history. According to Mr. Holmes, the Bonding Company was authorized to write bonds in most of the judicial districts in the state, being approved in approximately eighty-five of Tennessee's ninety-five counties. Mr. Holmes averred that, in some districts, the parent company wrote bonds under the name of a subsidiary, either Action Bail Bonding or Free At Last, given that those subsidiaries had "local notoriety" before being purchased by the parent company. Mr. Holmes affirmed that, although the Bonding Company had "a whole

- 2 -

bunch of different fictitious name filings with the Secretary of State[,]" the Bonding Company was not using any other names besides these three to write bonds. He also informed the trial court that the Bonding Company wrote approximately fifteen thousand bonds a year and that the Bonding Company filed the required semiannual reports in every district where it was authorized. He denied that the Bonding Company had any "final forfeitures outstanding anywhere across the State."

Counsel for the Bonding Company indicated that the Bonding Company was presently approved in the Twenty-First Judicial District to write bonds at a capacity of fifty million dollars and was requesting the same in the Twenty-Sixth Judicial District. The trial court noted that the maximum to be issued for a single bond in the Twenty-Sixth Judicial District was two-hundred thousand dollars.

Counsel averred that the Bonding Company had attached to its original petition a letter of good standing for most of the districts where it did business, but for those districts where it was unable to obtain a letter, it had included the most recent semiannual reports in lieu thereof. The trial court asked counsel if she could obtain letters of good standing from each judicial district where the Bonding Company operated, but she said that she could not because some districts had refused to issue such a letter. The trial court indicated that the Bonding Company would, nonetheless, be required to submit these letters because it needed them to assess the Bonding Company's "overall" liability, such as how many bonds were outstanding and how many were in either conditional or final forfeiture status. The trial court stated that it would provide an order to counsel that she could give to the various court clerks of those districts to facilitate obtaining the letters. Although Mr. Cole and Mr. Holmes had attached to their petition certificates indicating continuing education compliance for 2022, the trial court requested that they file updated certificates for 2023.

The court clerk noted that the Tennessee Bureau of Investigation ("TBI") criminal background report had been received for Mr. Holmes. According to the court clerk, Mr. Holmes had a previous charge for "assault with bodily harm" on April 11, 2022, in Knoxville but that those charges had been dismissed on August 27, 2023. She had not received a report on Mr. Cole.

The trial court asked the Bonding Company to submit the requested information by the end of December and took the case under advisement. The trial court also stated that it wanted the State to file a response to the petitions because it had not done so yet. The matter was reset for January 29, 2024, and the trial court indicated that the Bonding Company's owners and Ms. Cerniglia should again be present at that time in case the need for additional information arose.

- 3 -

The State filed its response to the petitions on November 30, 2023. The response indicated that the District Attorney's Office had "no opposition" to the Bonding Company's request and that it would leave the determination of the Bonding Company's approval to the discretion of the trial court.

The next hearing took place as scheduled on January 29, 2024. The trial court indicated that it had received "a packet of information" from the Bonding Company "last Friday" but that it had not had a chance to review the documents.[1]

Counsel for the Bonding Company indicated that they had encountered "a great deal of problems" getting the requested letters of good standing. She noted that the president of the Bonding Company "got yelled at by a number of courts." She said she had received "a talking to politely from a judge's assistant on how another judge can[not] order clerks to do work," to which she responded, "I'm between a rock and a hard place. That's above my pay grade." Counsel asserted that the Bonding Company had "provided as much as [it] could" within the given timeframe. According to counsel, all of the letters that had been received from the districts willing to provide them indicated that the Bonding Company was in good standing in the various judicial districts. Counsel also indicated that she had tendered more letters that had arrived after the submission of the packet. The trial court asked if counsel had a list of the districts where she was unable to obtain the letters, and she replied that the "talking to" she received came from a judicial assistant in Putnam County. Counsel said she could compile a list and email it to the court, and the trial court expressed a desire for her to do so.

Upon questioning by the trial court, counsel confirmed that the Bonding Company wrote bonds in three different company names throughout the State, all of which were licensed. The trial court asked that the Bonding Company also submit information relating to these companies so that the trial court could obtain a comprehensive assessment of the Bonding Company's financial condition.

The trial court stated that it needed time to review the information and reset the matter for February 26, 2024. The trial court confirmed that all interested parties would still need to appear at the next hearing. Counsel then noted that the Bonding Company's president was traveling from Knoxville for the various hearings and asked the trial court if it was amenable to conducting the hearing via Zoom. The trial court indicated its dislike for virtual hearings and relayed its desire for people to be present in the courtroom "because it's serious business." Counsel said, "That is fine," and that concluded the hearing.

---

[1] It does not appear that this "packet of information" was filed with the trial court clerk because it is not a part of the record on appeal.

The next hearing took place on March 18, 2024, later than originally scheduled. Counsel for the Bonding Company indicated that she had complied with the trial court's previous request and had emailed a list of all the judicial districts that refused to provide letters of good standing.[2]  The trial court indicated that affidavits from Mr. Cole and Mr. Holmes, as required by Tennessee Code Annotated section 40-11-317 setting forth their criminal history, as well as declarations that they had never filed for bankruptcy, were not attached to the original petition and were absent from any of the additional materials submitted.  Counsel averred that the affidavits had been provided, but she said she would resubmit them.

Counsel noted that Mr. Holmes had a previous criminal charge in Knoxville, which was later dismissed, and that she had discussed this information with the Madison County Court Clerk.  The court clerk noted that the TBI reports for both Mr. Cole and Mr. Holmes had been received and that only Mr. Holmes's aforementioned assault charge was referenced therein.  Counsel also said that the dismissed assault charge had been referenced in the original affidavit by Mr. Holmes.  Counsel offered, "[B]oth individuals can testify that they do not have any criminal history. . . .  And that they are all in compliance with the educational requirements and not in any bankruptcy proceedings.  They don't have any civil judgments against them."  However, the trial court declined the offer and requested for documentation purposes that counsel file with the court clerk new affidavits "stating all of the information that's required under the statute[.]"

The trial court then stated that, according to documents it had reviewed from the Tennessee Secretary of State, the Bonding Company was writing bonds in eight different names across the State.  Those documents reflected eight "active assumed names"—the parent company, "Tennessee Bonding Company," as well as its subsidiaries, "A All [t]he Time Bail Bonds"; "Action Bail Bonding"; "Pride Bail Bonds"; "Free At Last Bonding"; "Nashville Bail Bonds"; "Mr. Bail, Inc."; and "A-1 Bonding."  Counsel confirmed that this information was accurate, but she explained, "Now, they may not be writing on the bonding slips each of those names, but they have bought those companies."  The trial court noted that the judicial district's local rules state that one could "only have [a] . . . financial interest in one bonding company."  Counsel said one of the owners could explain the company structure, but the trial court told counsel to have him include the information in the affidavit.

The trial court reset the matter for April 22, 2024, to await submission of the affidavits.  The trial court asked that the owners and Ms. Cerniglia return to court for the

---

[2] Again, we note that this information is not contained in the appellate record.

hearing. The trial court mentioned that, if counsel received any additional letters of good standing, then to submit them because "that's what [the judicial district] require[d]."

Thereafter, the Bonding Company filed the requested affidavits from Mr. Cole and Mr. Holmes. In those affidavits, Mr. Cole affirmed that he had not "committed any act of professional misconduct as described in T[ennessee] C[ode] A[nnotated section] 40-11-126"; had "not been convicted of any criminal offenses in the United States"; was "aware and ha[d] read the applicable bonding statutes, the Rules Governing Professional Bondsmen and Requirements for Continuing Education, and the Rules of the Court governing bonding companies"; and had "never declared bankruptcy under T[ennessee] C[ode] A[nnotated section] 40-11-317(c)." Mr. Holmes made all of the same affirmations except that his was worded, "I have never declared bankruptcy[,]" without reference to any Code section. No additional information was contained therein.

On April 19, 2024, the State filed an amended response to the petitions; this time opposing the Bonding Company's request for approval to write bonds in the Twenty-Sixth Judicial District. Thereafter, the Bonding Company filed a written response on April 22, 2024, to the State's complaints against the company.

At the April 22, 2024 hearing, Mr. Cole, Mr. Holmes, and Ms. Cerniglia, along with counsel, were present. The trial court stated that it wanted to hear from the prosecutor first to discuss the information in the State's amended response. The prosecutor relayed that the State's investigators had discovered that Mr. Cole had twice filed for bankruptcy in Virginia and that he had state and federal tax liens, which were directly contrary to Mr. Cole's testimony at the November 27, 2023 hearing on those topics. Counsel for the Bonding Company objected, stating that, "at this point in time, [she did not] know what [the prosecutor was] referring to[,]" because she had not received "any proof" from the State of these bankruptcies or tax liens, and noting that the State had not attached any documents to its amended response.

The prosecutor replied that, although the District Attorney's Office had "sent off for certified copies of the bankruptc[ies] from the Eastern District of Virginia[,]" the State had not yet received those documents. The prosecutor likewise noted that he was still "in the process of getting certified copies of" documents from the Internal Revenue Service related to Mr. Cole's tax liens. Additionally, the prosecutor informed the trial court that the State had also learned that the Bonding Company was either "currently suspended or ha[d] been suspended recently" in other judicial districts. The State's amended response referenced a suspension in the Twenty-Fourth Judicial District. At the hearing, the prosecutor also mentioned a suspension in the Tenth Judicial District "due to the fact that [the Bonding Company] owed two final forfeitures that had not been paid." The prosecutor averred that

he had only just become aware of much of this information and had not yet "had time to get certified copies of those orders[.]" The prosecutor requested a continuance for time to obtain the necessary documentation.

Counsel for the Bonding Company stated that she was unable to recall with certainty what Mr. Cole testified to at the November 27, 2023 hearing because she had not "been provided any transcripts" of the prior proceedings. Counsel argued that, pursuant to the wording of Tennessee Code Annotated section 40-11-317(c), Mr. Cole had not "been discharged . . . in a bankruptcy proceeding leaving unsatisfied outstanding forfeitures" either as a bondsman individually or a corporation owner; therefore, he had not lied when he said he had never filed for bankruptcy. The trial court asked, "He's never declared bankruptcy as a bondsman?" to which counsel answered, "Correct." Regarding the tax liens, counsel contended that it "is not considered a civil judgment against [a person] if it is discharged." Counsel also claimed that, without proof from the State, she was unable to confirm the Bonding Company's suspension in the Tenth Judicial District. As for the Bonding Company's suspension in the Twenty-Fourth District, counsel acknowledged that the Bonding Company had been suspended in that district, but she attached to her response an order of that suspension's being lifted. Counsel claimed that the suspension was due to "a clerical error that was resolved over [Z]oom." The order stated that Ms. Cerniglia "submitted the wrong form for" a defendant's bond by using an Action Bail Bonding form, rather than a Tennessee Bonding Company form, that Action Bail Bonding was not licensed in that district, and that the error was to be rectified.

Counsel again noted that the State had not provided any proof of its allegations, and she said that she would like to see this documentation so that the Bonding Company could "subpoena [those sources] and have them cross-examined if [the parties were] wanting to go forward." However, counsel submitted that, regardless, these issues had no bearing on "approving the bonding company under the statute[,]" and she asked that the State's request for a continuance be denied. She noted that the Bonding Company had been compliant and appeared before the court multiple times, that the State had sufficient time at this point to investigate this matter, and that continuing to come to court was a waste of company resources. Specifically, counsel argued, "So, respectfully at this time I think with almost a year of this case pending, we would request an order from Your Honor saying whether you grant or deny it because the State's listed objections in their response are not relevant to anything in the [C]ode." She later reiterated, "And, you know, we've been coming here for several times and we're honestly asking just for an order granting or denying us."

Despite counsel for the Bonding Company's protestations, the trial court granted the prosecutor's request for a continuance, noting the State's obligation to the citizens of

Tennessee to investigate these matters. The following colloquy between the trial court and the Bonding Company's counsel then took place:

[COUNSEL]: And, Judge, I would ask that I understand you're opposed to [Z]oom. I'm a high[-]risk pregnancy and I might be told to stop traveling at any point in time. If that comes about, I would respectfully request I be able to do that.

I don't have an email. I'm clearly able to but, my doctor says it's week-to-week.

THE COURT: Okay. Well, I mean, if I set another date, I'm going to expect you to be here unless you just physically can't be here.

[COUNSEL]: Correct. And I would attach a letter from my doctor saying that I'm not able to be here in person and I would ask that we be able to do it over [Z]oom.

THE COURT: No. I'm not doing that. I'm not going to do it over [Z]oom. I mean, if we're going to have a hearing, we're going to do it here in open court with everybody who has an interest being here.

[COUNSEL]: Okay.

THE COURT: I mean, you know. But, I'll work with you. I mean, obviously if you tell me that you're a high[-]risk pregnancy, I don't want to jeopardize your health.

[COUNSEL]: Well, I understand that, Judge. I'm not due until November and then I won't be able to travel until January so it's, you know, that's why I asked about [Z]oom, but I'll let the Court know.

Upon agreement, the case was then reset for June 10, 2024.

On May 20, 2024, the State filed another amended response opposing the Bonding Company's petitions to write bonds. In the response, the State alleged the following evidence contradicted previous assertions from the Bonding Company. First, Mr. Cole had filed for bankruptcy individually on April 27, 1999, in the United States Bankruptcy Court for the Eastern District of Virginia. Then, on November 11, 2011, Mr. Cole had filed for bankruptcy as debtor Brian Cole Bail Bonds, LLC in the United States Bankruptcy Court

for the Eastern District of Virginia, and Mr. Cole was the debtor designee in that petition. Next, on January 19, 2022, the Bonding Company's privilege to write bonds had been suspended in the Twenty-Third Judicial District, and that suspension remained in place as of March 9, 2024. Finally, on October 2, 2023, the Bradley County Circuit Court had issued a final forfeiture order against the Bonding Company for a fifteen-thousand-dollar bond; that the notice of final forfeiture had been served on the Bonding Company on October 24, 2023; and that the bond remained unpaid as of March 7, 2024, resulting in suspension of the Bonding Company's privileges in the Tenth Judicial District. In the response, the State also cited a local rule that stated, "All new bonding companies and agents must have a letter of good standing from all the surrounding counties."

Attached to this response was a transcript of the November 27, 2023 hearing; a copy of both bankruptcy proceedings; and a copy of both suspension orders. The April 1999 bankruptcy petition filed by Mr. Cole individually listed as an unsecured debt a "bail bond premium while employed at Bail America" in the amount of five thousand dollars. The suspension order from the Tenth Judicial District also referenced another unpaid bond in the amount of two thousand five hundred dollars and indicated that the Bonding Company was emailed about this matter on January 30, 2024, and this bond likewise remained unpaid as of March 7, 2024. The Dickson County Circuit Court "Order of Termination," representing the Twenty-Third Judicial District, stated as follows:

> The State's proof . . . established numerous final forfeitures on appearance bonds made by Respondent Tennessee Bonding Company and that many of those forfeitures remained unpaid as of the date of the hearing. While the Respondent offered testimony by Kenneth Holmes, president of Tennessee Bonding as to the efforts made to try to resolve the many final forfeitures, the Court finds that the proof demonstrates a lack of attention to its business activities within this District.

The order went on to provide examples of the Bonding Company's lack of attention to detail, including its failure to follow up on faxed requests for extensions, its obtaining a court order for three exonerations and one extension without informing the trial judge that those forfeitures were a basis for a pending motion to suspend its bond writing privileges, and its failure to report its suspension in the Tenth Judicial District.

On June 7, 2024,[3] the Bonding Company filed a written response to the State's filing. The Bonding Company averred that, because Mr. Cole's bankruptcies had been

---

[3] To place certain matters in context that are discussed later in this opinion, we note that the certificate of service reflects that counsel for the Bonding Company emailed a copy of this response to Assistant District Attorney General Matthew Floyd on June 4, 2024.

discharged without leaving any unsatisfied outstanding forfeitures unpaid, they did not fall under the statutory language of Tennessee Code Annotated section 40-11-317(c), and "thus d[id] not matter in these proceedings." Regarding its suspension in Bradley County, a part of the Tenth Judicial District, the Bonding Company asserted,

> [T]he Company was never served with the forfeiture order and thus had no knowledge of this matter. Judge Donaghy of their Circuit Court investigated and discovered that a clerk signed for the final forfeiture instead of proper notice being given to the company. We are awaiting a letter from her stating such but in the meantime any questions regarding this matter should be directed to her office. The company has been reopened there for a couple of months.

The Bonding Company noted that, in its original petition, it addressed its suspension in the Twenty-Third Judicial District and had "attached the Court of Criminal Appeals ruling on this matter." According to the Bonding Company, it "ha[d] been trying for a year and [a] half since the ruling to be opened back up, but hearings ke[pt] getting moved [six] months at a time." The Bonding Company further noted that it had "submitted the semiannual report for this district to show the still pending bonds that the company [was] still liable for." The Bonding Company concluded, "At this time, all matters have been addressed and we would respectfully request that an order in this matter be handed down immediately."

On Monday, June 10, 2024, the hearing took place as scheduled. At the outset of the hearing, the trial court noted that neither counsel for the Bonding Company nor its agents were present despite the trial court's previous order to return to court in person for further argument and proof. The trial court then discussed an email from counsel for the Bonding Company that was sent to the court on Friday, June 7, 2024. The trial court seemingly read the email for the record:

> [U]nfortunately I will not be able to travel on Monday . . . . Please let me know if [the trial judge] will do a [Z]oom [proceeding] as soon as possible. . . . I talked to my clients and since I have been on this matter since the beginning if the Judge cannot accommodate with a virtual option, . . . I will not be able to come to court until after next year.

The trial court noted that it was "[o]bviously . . . not going to hear this matter by [Z]oom or any type of virtual option." It continued, "She knew to be here today . . . to present further proof on behalf of her client in order of whether or not the Court would approve or not approve the petitions." The trial court then returned to reading counsel's email: "At

- 10 -

this point in time, . . . I do think it is appropriate that we get an order granting or denying our company's approval." In the end, the trial court decided, "I do want to go forward and at least make some kind of a ruling. I guess that's what she's asking the Court to just make a ruling either approving or denying their petition[s]." Thereafter, the State presented proof in opposition to the petitions.

The State made exhibits to the hearing the same documents attached to its May 20, 2024 response. Additionally, the State submitted a January 4, 2024 notice from the Twenty-Fourth Judicial District, signed by a trial judge, suspending Ms. Cerniglia's and the Bonding Company's approval to write bonds in that judicial district. The notice provided that Ms. Cerniglia had written a bond in the name of Action Bail Bonding in an amount of one-hundred thousand dollars, but that Ms. Cerniglia was not a listed agent of that company, and that Action Bail Bonding did not have privileges to write bonds in that district. The State also submitted an order from the Hickman County Circuit Court in the Thirty-Second Judicial District, signed by a trial judge and dated January 2, 2024, imposing a thirty-day suspension on the Bonding Company due to its failure to comply with a local rule "by making a bond exceeding $100,000.00 without having knowledge of whether or not the District Attorney General waived a source hearing." For a period of one year, the Bonding Company was also prohibited in that district from making bonds in an amount of one-hundred thousand dollars or more "until an order approving the bond ha[d] been entered by the Circuit Court Judge."

The State observed that Mr. Cole's and Mr. Holmes's licenses to write bonds that were attached to the Bonding Company's original petition had now expired, and new licenses had not been submitted. The State also noted that the Bonding Company's approval to write bonds in the Twenty-Third Judicial District remained terminated.

The State called Gail Mooney, the Madison County Circuit Court Clerk, who testified that she was responsible for investigating the Bonding Company's request for approval to write bonds in the district. According to Ms. Mooney, she learned that the Bonding Company's "privileges had been suspended in about seven judicial districts," so she reached out to court clerks of other districts to obtain additional information. Ms. Mooney confirmed that she had received orders from all seven districts and that some of those orders had been entered into evidence. Ms. Mooney also became aware that, in March 2022, the Seventeenth Judicial District had denied the Bonding Company approval to write bonds.

Ms. Mooney investigated the bonding agents' financial solvency, which was her regular practice. She discovered that Mr. Cole had a federal tax lien for "small business" activities against him in the amount of $266,585.00 and that Mr. Cole had declared

bankruptcy in 1999 and 2011. Ms. Mooney was asked if she had documentation of the tax lien, and she stated she had "a print screen" and that she obtained "a custom comprehensive report" showing Mr. Cole's tax "liens and judgments against him." These documents included a case number, Mr. Cole's name, his social security number, the amount of the lien, and reflected a recording date of March 2019. Ms. Mooney stated that she had verified the federal tax lien "to be true and correct . . . [t]o the best of [her] knowledge." These documents also noted multiple "judgment[s]" and "civil suit[s]" against Mr. Cole, as well as specifically a "civil judgment" in the amount of one thousand dollars. When asked if Mr. Cole had a financial interest in more than one bonding company, Ms. Mooney said that she had been in contact with the Tennessee Secretary of State's office and learned that he was "connected to about" eight different company names.

A copy of both the "print screen" and the "custom comprehensive report" Ms. Mooney had obtained regarding Mr. Cole's tax liens and "judgments" were entered as an exhibit. The documents Ms. Mooney had acquired from the Tennessee Secretary of State, as well as the TBI report prepared for Mr. Cole verifying his identifying information, were also made exhibits. The trial court further admitted as an exhibit the circuit court order establishing the local rules governing bonding companies in the Twenty-Sixth Judicial District. The order reflects that Local Rule 6 requires, "All new bonding companies and agents must have a letter of good standing from all the surrounding counties. The letter should also inform our Clerk[']s Office if they have any outstanding Conditional or Final Forfeitures and if their bonding privileges have been suspended." The order further establishes Local Rule 10: "A bondsman or agent can only have a financial interest in one bonding company."

Thereafter, the trial court denied the Bonding Company's petitions seeking approval to write bonds in the Twenty-Sixth Judicial District. The trial court noted Ms. Mooney's testimony that the Bonding Company had been suspended in seven other judicial districts. The trial court also noted its consideration of the Tennessee Secretary of State documents indicating that the Bonding Company was writing bonds throughout the State using eight different names, which was "misleading" and "problem[atic]" for regulation. It found that Mr. Cole was "untruthful" when he testified at the November 2023 hearing that he had never declared bankruptcy and had no civil judgments against him, noting the two bankruptcies—one under the name of a bonding company—and the tax liens, specifically, the 2019 federal tax lien of $266,585.00. The trial court found that Mr. Cole's affidavit was also "untruthful" and "inaccurate[,]" even though it purported to clarify that he had never declared bankruptcy under the relevant statute. Referencing Tennessee Code Annotated section 40-11-317, the trial court observed that if an affidavit is found to be inaccurate, then the professional bondsman was to be immediately disqualified from writing bonds. Additionally, it found that Mr. Holmes testified falsely that the Bonding

- 12 -

Company had no outstanding final forfeitures at the time of the November 2023 hearing, noting the October 2, 2023 final forfeiture of fifteen thousand dollars in Bradley County, which was served on the Bonding Company on October 24, 2023, and remained unpaid. The trial court noted that Tennessee Code Annotated section 40-11-125 permitted the trial court to withdraw or suspend approval for a professional bondsman to write bonds due to any unpaid final forfeiture.

The trial court also noted that it had not heard any "sworn testimony from" Ms. Cerniglia. It stated that, based upon the documents submitted, she "apparently . . . had issues with other judicial districts of not being truthful" and that she had been recently suspended in another district. Accordingly, the trial court denied her petition as well.

The written order memorializing the trial court's findings, as prepared by the Assistant District Attorney General per the trial court's request, was filed on June 20, 2024. Thereafter, on July 3, 2024, the Bonding Company filed a "Request to Modify the Court's Order to Correct Inaccuracies." The Bonding Company again averred that pursuant to the statutory language, Mr. Cole was not required to disclose the bankruptcies. Relative to proceedings in the Tenth Judicial District, the Bonding Company alleged that "the final forfeiture was never served on an employee of the [B]onding [C]ompany but on a clerk of the Bradley County Court[,]" and regardless, the final forfeiture had been paid. According to the Bonding Company, because of these service issues, Mr. Holmes was unaware of the forfeiture at the time he testified in November 2023. Moreover, the Bonding Company contended that it "ha[d] not seen any proof" of Mr. Cole's federal tax lien.

Regarding the Bonding Company's failure to appear, counsel noted the issues with her ability to travel due to her high-risk pregnancy and stated her exception for the record. On this point, she relayed,

> [B]ack at the last hearing, Counsel informed the Court that she is high[-]risk pregnant and may not be able to appear at future hearings and would request a [Z]oom option. The Court denied Counsel[']s request at that time. On June 4, 2024, Counsel emailed Matthew Floyd of the District Attorney's Office and the Judge's assistant with a Response to a State filed Motion and informed the two individuals, "Unfortunately, my high[-]risk pregnancy came with some complications these past couple of weeks. I am still hopeful that I will be able to appear in person on the 10th but am asking if the Judge would consider [Z]oom as a possibility if I [cannot] travel. I understand that he is against that but these are extenuating circumstances out of my control. I will of course inform you both on Friday if I am unable to travel as well." Counsel never received a reply. On June 7, 2024, Counsel emailed the same

- 13 -

two individuals and stated, "Hi all. Unfortunately I will not be able to travel on Monday. Please let me know if [the] Judge will do [a Z]oom [meeting] as soon as possible. I talked with my clients and since I have been on this matter since the beginning, if the judge cannot accommodate with a virtual option I will not be able to come to court until after the new year." Again, Counsel received no reply.

. . . Unfortunately, during this pregnancy Counsel is very high risk and not able to travel for more than two hours in a car. If Counsel were to drive to Court, her pregnancy would have put her and her baby's life in risk of a blood clot or stroke. It saddens Counsel that she is having to disclose her personal health information in a filing since this has been put in a Court order.

The Bonding Company also argued that its agents were "prohibited from appearing from hearings on their own behalf by statute." The Bonding Company requested that the matter be set for a hearing in the new year. On July 19, 2024, the Bonding Company filed a notice of appeal with this court.

The trial court held a hearing on the Bonding Company's request for modification on August 19, 2024, and again neither counsel for the Bonding Company nor its agents were present. According to the trial court, counsel had again sent the court an email "indicating that she wasn't sure she was going to be able to make it due to some pregnancy issues," and requesting the hearing to be held over Zoom. The trial court said that it had "explained [to counsel] that this was a matter that needed to be heard in open court and that [the court] was not willing to hear this by [Z]oom or conference call." Thereafter, the trial court denied the request for modification, and a written order was entered to that effect on August 22, 2024.

## II.   ANALYSIS

The Bonding Company now appeals from the trial court's denial of approval for its agents to write bonds in the Twenty-Sixth Judicial District. Tennessee Code Annotated section 40-11-125(a) provides that a professional bondsman's "approval" to write bonds may be summarily "withheld, withdrawn or suspended by any court if, after investigation, it appears that a bondsman":

(1) Has been guilty of violating any of the laws of this state relating to bail bonds;

- 14 -

(2) Has a final judgment of forfeiture entered against the bondsman which remains unsatisfied;

(3) Is guilty of professional misconduct as described in § 40-11-126; or

(4) If applying for approval as a professional bondsman, has been convicted in any state of the United States of two (2) or more misdemeanors which are equivalent to Tennessee Class A or Class B misdemeanors; provided, however, that the misdemeanor convictions shall have occurred within five (5) years of the date the application for approval is filed.

Tenn. Code Ann. § 40-11-125(a) (Repl. 2018).[4] Regarding a hearing and notice, the statute provides for the following:

Any court withholding, withdrawing or suspending a bondsman or other surety under this section shall notify the bondsman in writing of the action taken, accompanied by a copy of the charges resulting in the court's action. If, within twenty (20) days after notice, the bail bondsman or surety files a written answer denying the charges or setting forth extenuating circumstances, the court shall call a hearing within a reasonable time for the purpose of taking testimony and evidence on any issues of fact made by the charges and answer. The court shall give notice to the bail bondsman, or to the insurer represented by the bondsman, of the time and place of the hearing. The parties shall have the right to produce witnesses, and to appear personally with or without representation by counsel. If, upon a hearing, the court determines that the bail bondsman is guilty as alleged in the charges, the court shall thereupon withhold, withdraw or suspend the bondsman from the approved list, or suspend the bondsman for a definite period of time to be fixed in the order of suspension.

Tenn. Code Ann. § 40-11-125(b) (Repl. 2018). We review the trial court's denial of approval for a bonding company to write bonds in its jurisdiction de novo. *Id.* § -125(d) (Repl. 2018).

---

[4] Effective January 1, 2026, the newly established Board of Professional Bondsmen will begin to regulate and license professional bondsmen. *See* 2025 Tenn. Pub. Acts, ch. 491. This board, overseen by the Department of Commerce and Insurance, will take over much of the regulation of bondsmen from the courts, and the various Code sections have been amended accordingly. *Id.* For the purposes of our opinion, we will cite to the Code sections in effect at the time these proceedings took place.

We observe that, according to the very terms of Code section 40-11-125, the State, through its courts, has a responsibility to the citizens of this state to investigate matters concerning a bonding company's ability to write bonds. *See* Tenn. Code Ann. § 40-11-125(a) (stating that "approval of a professional bondsman or other surety may be withheld, withdrawn or suspended by any court if, *after investigation*, it appears that a bondsman" has engaged in any of the enumerated prohibited behaviors) (emphasis added)). Moreover, a court in which a bonding company executes bonds has specific authority, at any time, to inquire as to the solvency of any bondsman and to investigate the value of a bondsman's assets and liabilities. *Id.* § -305.

If, after its investigation, the court finds that the bondsman:

(1) Is insolvent;

(2) Is not financially able to discharge the obligations of the bondsman's liabilities as surety;

(3) Has failed, refused or neglected to make the semiannual reports of assets and liabilities as required in § 40-11-303;

(4) Has made and filed false semiannual reports; or

(5) Has failed to furnish the court with information touching upon solvency, when called for[,]

then the court has the power to prohibit a bondsman from executing bonds until the court becomes satisfied that the bondsman has become financially solvent. *Id.* § -306 (Repl. 2018). The court can also impose reasonable limitations on the total liability of the bondsman's undertakings in its court. *Id.*

## A.     Right to Representation

The Bonding Company argues that the trial court erred by proceeding with the June 10, 2024 hearing without its chosen counsel present. The Bonding Company also argues that, even if its agents had been present at that hearing, they would have been unable to represent themselves due to statutory proscription. The State replies that the Bonding Company waived its right to participate in the June 10, 2024 hearing by failing to appear, either through counsel or its agents, or move for a continuance after the trial court denied its request for a Zoom hearing.

- 16 -

### 1. Statutory Argument

First, we address the Bonding Company's argument that, even if its agents had been present at the June 10, 2024 hearing, they would have been unable to represent themselves before the court. The Bonding Company contends that, even if its agents were present at the hearing, "they would not have been permitted by law to address the Court" without legal representation because this was not one of the limited enumerated circumstances listed in Tennessee Code Annotated section 40-11-302(f). The State replies that "[t]his argument is puzzling because the trial court specifically asked the bonding agents 'to answer court' by giving testimony in support of their petition[s,]" which is one of said enumerated circumstances.

The State, quoting Tennessee Code Annotated section 40-11-125(b), avers that, regardless, the Bonding Company "completely ignores the statute authorizing bondsmen 'to appear personally with or without representation by counsel' at a hearing on a petition to write bonds." In response, the Bonding Company submits that Code section -125(b) only applies "when a company has already been approved and that approval is being withheld, withdrawn or suspended."

The Bonding Company's arguments in this regard are unpersuasive. First, Tennessee Code Annotated section 40-11-302 provides "general provisions" for professional bondsmen. Subsection (f), the statutory provision relied upon by the Bonding Company, provides as follows:

> An individual sole proprietor professional bondsman, or the bondsman's agent, as an officer of the court, shall be permitted to answer court, surrender a defendant based upon one (1) or more of the grounds set forth in § 40-11-132, obtain an extension of time, or respond to a court's request for information without the necessity of obtaining legal counsel.

Tenn. Code Ann. § 40-11-302(f). By its explicit terms, the subsection enumerates four settings when a professional bondsman may appear without the necessity of obtaining legal counsel: (1) answer court; (2) surrender a defendant based upon one or more of the grounds set forth in Code section -132; (3) obtain an extension of time; or (4) respond to a court's request for information.

In the present case, the trial court specifically asked the bonding agents to return to court on June 10, 2024, and if necessary, for the agents "to answer court" or respond to the "court's request for information" by providing additional evidence in support of their petitions—both of which are circumstances specifically recognized by subsection (f) as

- 17 -

permissible without the necessity of obtaining counsel. Thus, contrary to what the Bonding Company suggests, the appearance of its agents without counsel and their ability to address the court were permitted by this statutory provision.

Next, we agree with the State that Tennessee Code Annotated section 40-11-125 lends further support for the proposition that the Bonding Company's agents could have appeared at the June 10, 2024 hearing with or without counsel present. Code section -125 is specifically applicable to a trial court's summary decision to *withhold* approval, in the first instance, to a professional bondsman to write bonds in its jurisdiction. *See* Tenn. Code Ann. § 40-11-125. If a bondsman's approval to write bonds is summarily withheld, then the trial court must provide the bondsman written notice "of the action taken, accompanied by a copy of the charges resulting in the court's action." *Id.* § -125(b). If the bondsman files a written answer within twenty days of the notice denying such charges, the trial court is required to hold "a hearing within a reasonable time for the purpose of taking testimony and evidence on any issues of fact made by the charges and answer." *Id.* At this hearing, "[t]he parties shall have the right to produce witnesses[] and to appear personally *with or without representation by counsel*." *Id.* (emphasis added). Certainly, if a bondsman may appear without counsel at the hearing after approval has been summarily withheld, then they logically may also appear during investigatory proceedings undertaken by the court with or without counsel.

Accordingly, we conclude that both of these statutory provisions confirm that the agents of the Bonding Company were permitted to appear before the court at the June 10, 2024 hearing with or without the representation of counsel. Even if the Bonding Company's chosen counsel was unavailable to attend the hearing, the Bonding Company's agents failed to either appear at the hearing as ordered by the trial court or seek other counsel to represent them. Moreover, neither the Bonding Company's agents, nor its counsel, ever formally moved for continuance of the hearing, a matter which we discuss in greater detail below.

## 2. Due Process

Next, we address the Bonding Company's argument that the trial court erred by proceeding with the June 10, 2024 hearing without its chosen counsel present. In this regard, the Bonding Company notes that its counsel notified the trial court via email that she was medically unable to travel due to her high-risk pregnancy and requested the trial court to reconsider a virtual option; however, the trial court did not respond to either of her emails. The State replies that the Bonding Company's "argument sounds in due process"; "it is unclear whether the company had a constitutionally protected property interest in seeking approval to write bonds"; and regardless, the Bonding Company "received all the

process that was conceivably due" in accordance with Code section 40-11-125(b). The Bonding Company responds that "[t]his is a case where due process should be flexible[,]" again noting the circumstances surrounding its counsel's high-risk pregnancy, including that she was ultimately physically unable to travel to attend the hearing, and that she chose to email the trial court rather than document her health issues in the public record.

The Bonding Company's argument in the present case focuses on the fairness of the adjudicatory process itself that took place at the June 10, 2024 hearing, *i.e.*, whether it was afforded procedural due process protections when the hearing proceeded without the Bonding Company's counsel present. The Fifth and Fourteenth Amendments of the United States Constitution prohibit the federal and state governments from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V, amend. XIV, § 1. Article 1, section 8 of the Tennessee Constitution provides, "[N]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

These constitutional provisions "embody similar procedural protections and guarantees." *State v. AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d 81, 85 (Tenn. Crim. App. 1998) (first citing *Doe v. Norris*, 751 S.W.2d 834, 838 (Tenn. 1988); then citing *State ex rel. Anglin v. Mitchell*, 596 S.W.2d 779, 786 (Tenn. 1980); and then citing *Daugherty v. State*, 393 S.W.2d 739, 743 (Tenn. 1965)). Those protections and guarantees "prevent the government from infringing upon significant property or liberty interests without first providing notice and an opportunity to be heard at a meaningful time and in a meaning[ful] manner." *Id.* (first citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); and then citing *Cooper v. Williamson Cnty. Bd. of Educ.*, 803 S.W.2d 200, 202 (Tenn. 1990)).

Before these procedural safeguards may be invoked, the allegedly aggrieved party must possess a constitutionally protected liberty or property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-78 (1972). The right to engage in a chosen business, occupation, or profession, including the bail bonds industry, without unreasonable governmental interference may implicate both liberty and property interests subject to due process protection. *AAA Aaron's Action Agency Bail Bonds*, 993 S.W.2d at 85 (citing *Loudermill*, 470 U.S. at 543). However, there must also be a deprivation of that interest by the government. *Id.* (citing *Rowe v. Bd. of Educ.*, 938 S.W.2d 351, 354 (Tenn. 1996)). For procedural due process claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citations omitted). Thus, we must first

determine what process is due, if any, and whether such process has been afforded. In determining the adequacy of the process due, courts weigh (1) the private interest affected by the deprivation; (2) the risk of an erroneous deprivation of such interest in the process used, and the probable value, if any, of additional or alternative precautions; and (3) the governmental interest involved, including the burden of additional safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

However, in this regard, the Bonding Company makes only one argument supported by citation to legal authority: the Bonding Company cites to *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), in its reply brief, for the conclusory proposition that "due process is flexible and calls for such procedural protections as the particular situation demands." The Bonding Company makes no legal argument regarding what protected liberty or property right was infringed upon by the trial court; whether the overall statutory process provided for in Code section 40-11-125, which includes a provision for a post-deprivation hearing, complies with constitutional mandates; or whether the *Mathews v. Eldridge* balancing test affords it more procedural process than it was given. The lack of argument, coupled with the lack of connection to any specific supporting authority or relevant law, inhibits meaningful appellate review in this case. *See* Tenn. R. App. P. 27(a)(7) ("The brief of the appellant shall contain . . . [a]n argument . . . with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]"); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

The Bonding Company has failed to include any argument whatsoever in these regards, and it is not our role to construct the argument for it or undergo a multifaceted procedural due process analysis unsupported by the briefs. *See State v. Bristol*, 654 S.W.3d 917, 924 (Tenn. 2022) ("In our adversarial system, the judicial role is not 'to research or construct a litigant's case or arguments for him or her[.]'" (quoting *Sneed v. Bd. Pro. Resp.*, 301 S.W.3d 603, 615 (Tenn. 2010))); *see also State v. Matthews*, No. M2005-00843-CCA-R3-CD, 2008 WL 2662450, at *17 (Tenn. Crim. App. July 8, 2008). Accordingly, an appellate court "may decline to consider issues that a party failed to raise properly." *Id.* at 923 (quoting *State v. Harbison*, 539 S.W.3d 149, 165 (Tenn. 2018)). We thus confine our analysis to the limited due process issue as presented, that being whether the Bonding Company had an adequate opportunity to be heard in a meaningful time and manner.

The Bonding Company's due process argument on appeal focuses on the trial court's denial of a virtual option to conduct the June 10, 2024 hearing, given its counsel's inability to travel due to her high-risk pregnancy. The Bonding Company first requested a virtual option for these proceedings at the January 29, 2024 hearing, when counsel noted that the Bonding Company's president was traveling to court from Knoxville and indicated

that a Zoom hearing would be preferable for convenience. The trial court clearly expressed its dislike for Zoom hearings at that time and indicated that such would not be permitted.

At the April 22, 2024 hearing, counsel first argued against the continuance requested by the State, saying, "And, you know, we've been coming here for several times and we're honestly asking just for an order granting or denying us." After the State was granted a continuance, counsel noted that, although the court was "opposed to [Z]oom[,]" her doctor might, at some point in time, require her to quit traveling long distances due to her high-risk pregnancy. Counsel indicated that, if that occurred, she "would attach a letter from [her] doctor saying that [she was] not able to be [present] in person" and, at that time, request a hearing via Zoom. The trial court stated it would not hold a Zoom hearing, but it qualified that it "would work with [her,]" as it had no interest in "jeopardiz[ing] [her] health." Counsel indicated that she would "let the Court know" about her health as time progressed.

At the beginning of the Monday hearing on June 10, 2024, the trial court stated for the record that counsel for the Bonding Company had sent an email to the court on Friday, June 7, 2024, relaying that she was unable to travel, again requesting a Zoom hearing, and noting that she would be unavailable to appear in the trial court until the following year. Counsel concluded her email by stating, "At this point in time, . . . I do think it is appropriate that we get an order granting or denying our company's approval."

The trial court here specifically denied the Bonding Company's several requests to hold any hearing via Zoom and mandated appearance by the Bonding Company at the June 10, 2024 hearing. In short, "the trial court put down a clear order, and [the Bonding Company] failed to abide by it." *In re Daxleigh F.*, No. E2023-00749-COA-R3-PT, 2024 WL 864773, at *7 (Tenn. Ct. App. Feb. 29, 2024) (rejecting claim that the trial court violated a mother's due process rights by denying her request to appear via Zoom at the final hearing on the petition to terminate parental rights), *no perm. app. filed*. Despite these clear instructions, counsel continued to send emails to the trial court at the last hour requesting for the trial court to reconsider its decision and provide her with an option to appear virtually. However, these emails were often ambiguous, including counsel's email to the trial court as late as June 4, 2024, that she was still hopeful that she would be able to attend the June 10 hearing in person.

Importantly, this matter is not before us for review of the denial of a motion to continue based upon counsel's health issues. Counsel never at any time during this correspondence sought a continuance of the proceedings due to her health issues or for any other reason. *See Padilla v. Capital One*, *N.A.*, 392 So.3d 797 (Fla. Dist. Ct. App. 2024) ("Although a notice of unavailability is a useful pleading for apprising the court and the

parties of potential scheduling conflicts and for assisting them in efforts to accommodate counsel, *it is not an adequate substitute for obtaining a continuance order*." (citation omitted)). Instead, counsel persistently asked for an order either granting or denying the Bonding Company's petitions.

To be clear, we are not holding that attorneys should be required to provide extensive documentation to the court regarding their health issues. Although, if for some reason such is deemed necessary to the resolution of a proceeding, attorneys may request the court to file such information under seal. In addition, while some courts may utilize email communications to communicate with the parties, such communications are not a substitute for formal motions filed with the clerk and properly served on opposing counsel. In this case, counsel filed no such motion seeking relief from the trial court's clear preference for in-person hearings, nor did counsel file a motion seeking a continuance of the hearing. Accordingly, the hearing properly commenced on the scheduled date.

Although the Bonding Company seemingly argues that a full evidentiary and adversarial hearing was due prior to the trial court's withholding its approval to write bonds, the United States Supreme Court has recognized that "something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Mathews*, 424 U.S. at 343; *see also In re Blankenship*, No. W2024-00425-CCA-R3-CD, 2025 WL 882187, at *4 (Tenn. Crim. App. Mar. 20, 2025) (noting same in the context of the proceeding suspending a bail bondsman's ability to write bonds), *no. perm. app. filed*. Here, the Bonding Company had notice that a hearing would take place on June 10, 2024, during which the State would presumably offer proof in support of its allegations requesting denial of the Bonding Company's petitions. In fact, proof was specifically requested by the Bonding Company at the April 22, 2024 hearing. The Bonding Company was also already aware of much of the State's proof submitted in its absence at the June 10, 2024 hearing. Several of the documents admitted at the hearing had been attached to the State's May 20, 2024 written response, and the Bonding Company had filed a written reply to this response. Nonetheless, neither the Bonding Company's counsel nor its agents appeared at the June 10, 2024 hearing, and at that point, less than a year had passed from the time the Bonding Company had filed its petitions in the Twenty-Sixth Judicial District seeking approval to write bonds.

As observed above, the State has an obligation to investigate the financial solvency of the Bonding Company before giving approval to write bonds, and we cannot say that this is an unreasonable amount of time for the trial court to continue the case to determine the financial status of the Bonding Company. *See AAA Aaron's Action Agency Bail Bonds, Inc.*, 993 S.W.2d at 85 (noting the highly regulated nature of the bonding business). Moreover, the Bonding Company had participated in prior investigatory hearings, and its

agents had even testified before the trial court regarding their petitions. We conclude that the Bonding Company had already been afforded more than one adequate opportunity to be heard in a meaningful time and manner when the trial court proceeded with the June 10, 2024 hearing despite the Bonding Company's seemingly voluntary absence. *Cf. State v. Nelvis*, No. W2024-00622-CCA-R3-CO, 2025 WL 1627676, at \*5 (Tenn. Crim. App. June 9, 2025) (holding that the surety, which had received notice of the final forfeiture hearing, "lost an opportunity to show that it was *entitled* to relief from the forfeiture" when it failed to appear at the hearing or offer excusable reasons for its absence), *pet. to rehear denied* (June 24, 2025). Because the Bonding Company simply "ignored" the trial court's decision to hold an in-person hearing on June 10, 2024, "there is no due process violation." *In re Daxleigh F.*, 2024 WL 864773, at \*7.

We also note that Tennessee Code Annotated section 40-11-125(b) does not require the trial court to allow participation by the bondsman in the first instance prior to its decision to withhold approval. It only provides that once approval is summarily withheld, the bondsman is required to receive notice and hearing. As indicated above, the Bonding Company does not raise any issue on appeal, due process related or otherwise, relating to anything that occurred after the trial court's decision to withhold approval on June 10, 2024. Accordingly, the issue is waived. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); *State v. Ruzicka*, No. W2023-00134-CCA-R3-CD, 2024 WL 3387294, at \*7 (Tenn. Crim. App. July 12, 2024), *no perm. app. filed*. For all these reasons, the Defendant is not entitled to relief on this issue.

## B. Evidentiary Objections

The Bonding Company contends that the trial court improperly considered evidence in violation of Tennessee Rules of Evidence 901 (regarding authentication) and 1002 (regarding the "best evidence" rule). Specifically, the Bonding Company submits that "[t]here was no determination by the Court on authentication or identification as a condition to admissibility" of either of the two bankruptcy petitions from the Eastern District of Virginia or the "print screen" of Mr. Cole's tax liens. The State responds that the Bonding Company waived its evidentiary objection by failing to raise it in the trial court.

First, we note that without argument or citation to authorities, the parties assume that the trial court's strict adherence to the Rules of Evidence was required during the June 10, 2024 hearing. From our perspective, that conclusion is not obvious because, as observed in the preceding section, the Supreme Court has recognized that "something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Mathews*, 424 U.S. at 343. "By their own terms, the Tennessee Rules of Evidence do not apply to

- 23 -

administrative hearings, but rather to court appearances." *Davis v. Shelby Cnty. Sheriff's Dept*, 278 S.W.3d 256, 266 (Tenn. 2009) (citing Tenn. R. Evid. 101 ("These rules shall govern evidence rulings in all trial courts of Tennessee except as otherwise provided by statute or rules of the Supreme Court of Tennessee.")). *But cf. In re A-Action Bonding Co.*, No. M2013-01526-CCA-R3-CD, 2014 WL 5242607, at *8-10 (Tenn. Crim. App. Oct. 15, 2014) (analyzing Rules 901 and 1002 in reviewing a trial court's decision to admit an altered videotaped and finding reversible error in suspension of the bonding company's privileges for misconduct). For the purposes of our analysis here, we assume, without deciding, that strict adherence to the Rules of Evidence was required in this circumstance.

Turning to the State's argument of waiver, the Bonding Company replies that "[i]t is hard to raise objections in a hearing when no counsel is present to [do so]," again noting counsel's medical issues due to her high-risk pregnancy and that she could not physically be present under doctor's orders. However, as discussed above, the trial court did not err in proceeding with the hearing despite the Bonding Company's absence, or the absence of its counsel. Generally, a party's failure to make a contemporaneous objection results in waiver of the issue on appeal. *See* Tenn. R. App. P. 36(a); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). Such is the case here.

Despite the waiver, the parties disagree whether the Bonding Company is entitled to relief under the plain error doctrine. While the cases of *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000), and *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994), set forth the requirements of plain error relief in criminal cases, it is unclear whether those requirements apply in the instant context. *See Carman v. Kellon*, No. M2019-00857-COA-R3-CV, 2020 WL 7422071, at *3 (Tenn. Ct. App. Dec. 18, 2020) (noting that the use of the term "accused" in *Smith* and *Adkisson* "suggests that [the plain error] doctrine is generally applicable to criminal cases rather than to civil cases"). Nevertheless, the appellate rules allow us to consider issues that not properly preserved for appeal "(1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." Tenn. R. App. P. 13(b). Further, in the context of unpreserved claims, "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the right substantial rights of a party at any time[.]" Tenn. R. App. P. 36(b). As we will demonstrate, the Bonding Company is not entitled to relief under these principles.

The Bonding Company's argument simply relies upon the fact that the trial court did not make any determination "on authentication or identification" as a condition precedent to the admissibility of the bankruptcy petitions or the "print screen" of Mr. Cole's tax liens. The Bonding Company makes no substantive evidentiary argument that these

documents were not what they purported to be or that they contained incomplete or inaccurate information.

The copy in the record of the 2011 bankruptcy petition filed by Mr. Cole on behalf of Brian Cole Bail Bonds, LLC bears an official verification from a deputy clerk that it is "a true copy." The 1999 copy appears almost identical in nature. Also, Ms. Mooney, the Madison County Court Clerk, testified that she investigated the Bonding Company's solvency, which was her regular practice, and that she obtained "a print screen" and a "custom comprehensive report" regarding Mr. Cole's tax liens and "judgments." These documents included a case number, Mr. Cole's name, his social security number, the amount of the lien, and reflected a recording date of March 2019. Ms. Mooney also stated that she had verified this tax lien "to be true and correct[.]"

For these reasons, the Bonding Company has failed to show that correction of any error is necessary to avoid prejudice to the judicial process or necessary to do substantial justice. *See* Tenn. R. App. P. 13(b), 36(b). The Bonding Company is not entitled to the relief it seeks on this issue.

## C.    Denial Decision

We now turn to review the trial court's denial of approval to the Bonding Company for its agents to write bonds in the Twenty-Sixth Judicial District. The Bonding Company argues that the trial court's decision relying on "inaccuracies in the affidavits" was in error. In this regard, the Bonding Company simply argues that Mr. Cole's affidavit stating that he never declared bankruptcy as outlined in Code section 40-11-317(c) is accurate because he "did not have any bankruptcies involving outstanding forfeitures" that were unsatisfied. The State responds that the trial court's denial was proper because (1) the Bonding Company "failed to obtain letters of good standing, as required by local rule"; and (2) Mr. Cole "falsely testified about prior bankruptcies and federal tax liens." The Bonding Company replies that this court should reject the State's argument because the State did not rely on the lack of letters of good standing as a reason in support of denial in the trial court and the trial court did "not list the failure to obtain letters at all" in its decision to deny the Bonding Company approval.

It is well-established that "[a] trial court has full authority to determine who should be allowed to make bonds in its court. . . . [And,] a trial court has the inherent power to administer its affairs, including the right to impose reasonable regulations regarding the making of bonds." *Hull v. State*, 543 S.W.2d 611, 612 (Tenn. Crim. App. 1976) (first citing *Gilbreath v. Ferguson*, 260 S.W.2d 276, 278 (Tenn. 1953); and then citing *Taylor*, 334 S.W.2d at 736). The statutory requirements for bondsmen "do[] not by any stretch of the

imagination attempt to cover the whole field of what is necessary for a bondsman before he is allowed to make bonds in the various courts." *Taylor*, 334 S.W.2d at 736. Therefore, the legislature's enactment of statutes addressing bail bondsmen and their regulation does not interfere with the trial court's inherent powers of regulation in addition to the statute. *In re Hitt*, 910 S.W.2d 900, 904 (Tenn. Crim. App. 1995); *see also In re Int'l Fid. Ins. Co.*, 989 S.W.2d 726, 728 (Tenn. Crim. App. 1998) (noting that the statutory authority of the executive branch to regulate insurance companies does not preempt the inherent power of the judiciary to regulate the making of bail bonds underwritten by such insurance companies).

Tennessee Supreme Court Rule 18 authorizes the judges in each judicial district to adopt and publish local rules. However, local rules cannot be "inconsistent with the statutory law, the Rules of the Supreme Court, the Rules of Appellate Procedure, the Rules of Civil Procedure, the Rules of Criminal Procedure, the Rules of Juvenile Procedure, and the Rules of Evidence." Tenn. Sup. Ct. R. 18(a); *see also* Tenn. Code Ann. § 16-3-407; *In re Int'l Fid. Ins. Co.*, 989 S.W.2d at 729. While we review the exercise of a trial court's authority to regulate bonding companies through local rules for an arbitrary, capricious, or illegal determination, *Memphis Bonding Co. v. Criminal Court of Tennessee 30th District*, 490 S.W.3d 458, 463 (Tenn. Ct. App. 2015), the statute mandates that this court review a trial court's action in withholding approval for a bonding company to obtain privileges under a de novo standard of review; *see* Tennessee Code Annotated section 40-11-125(d).

Here, in issuing its oral ruling at the June 10, 2024 hearing, the trial court first noted Ms. Mooney's testimony that the Bonding Company had been suspended in seven other judicial districts and that documents from the Tennessee Secretary of State indicated the Bonding Company was writing bonds throughout the state using eight different names, making regulation difficult. The trial court then specifically found that (1) Mr. Cole was "untruthful" when he testified at the November 27, 2023 hearing that he had never declared bankruptcy and had no civil judgments against him; (2) Mr. Cole's affidavit was also "untruthful" and "inaccurate"; and (3) Mr. Holmes falsely testified that the Bonding Company had no outstanding final forfeitures at the time of the November 27, 2023 hearing; all of which were memorialized in the trial court's written order. The Bonding Company's argument to the contrary—that the trial court, in its written order, only listed one reason for its denial, which was due "to inaccuracies of the affidavits[,]" and did not rely on testimony from the November 27, 2023 hearing—is simply inapposite. Moreover, we emphasize that our review is de novo.

Mr. Cole specifically testified at the November 27, 2023 hearing that he had never had "any civil judgments" entered against him, nor had he "ever declared bankruptcy." The State submitted proof that Mr. Cole had twice filed for bankruptcy in the Eastern

District of Virginia, once individually in 1999, and then again in 2011 on behalf of Brian Cole Bail Bonds, LLC. Moreover, the State introduced, through Ms. Mooney, who had been tasked by the court to investigate the solvency of potential bonding companies, "a print screen" and a "custom comprehensive report" that she had obtained regarding Mr. Cole's tax liens and "judgments." These documents showed a federal tax lien against the Defendant in the amount of $266,585.00, which Ms. Mooney testified she had verified "to be true and correct[.]" These documents also reflected additional tax liens against Mr. Cole, both federal and state, and simply because these liens were later released, does not mean that Mr. Cole had never had "any civil judgments" entered against him. We note that also referenced in these documents were multiple "judgment[s]" and "civil suit[s]" against Mr. Cole, as well as specifically a "civil judgment" in the amount of one thousand dollars.

To the extent that the Bonding Company's argument is based upon Mr. Cole's testimony that he simply misunderstood what was being asked, we note that the trial court did not credit that testimony. *See In re Tennessee Bonding Co.*, No. M2021-01423-CCA-R3-CD, 2022 WL 17587864, at *7 (Tenn. Crim. App. Dec. 13, 2022) (noting the same when Mr. Holmes testified that he misunderstood the question when the Bonding Company made a present-tense representation in its semiannual reports that it wrote bonds in the Tenth Judicial District, although its privileges were actually suspended in that district). The trial court in this case aptly determined that Mr. Cole gave untruthful testimony at the November 27, 2023 hearing. *See id.* (agreeing, upon de novo review of Mr. Holmes's testimony, with the trial court's credibility assessment based upon the transcript, exhibits, and record as a whole).

In addition, in the 1999 bankruptcy petition, Mr. Cole listed as an unsecured debt a "bail bond premium while employed at Bail America" in the amount of five thousand dollars, and that debt was later discharged. He had also filed for bankruptcy in 2011 as the owner of a bail bond corporation. While we need not say with certainty that these matters violate the express statutory directive of Code section 40-11-317(c), they are clearly contrary to the assertions Mr. Cole made to the trial court during these proceedings. Moreover, counsel was asked if Mr. Cole had ever "declared bankruptcy as a bondsman?" to which she inaccurately answered in the negative. Relative to the affidavit, the trial court requested that Mr. Cole submit an affidavit declaring that he had never filed for bankruptcy of any kind. As the trial court noted, Mr. Cole's affidavit was also "untruthful" and "inaccurate[,]" even though it purported to clarify that he had never declared bankruptcy under the relevant statute.

As for Mr. Holmes, he testified at the November 27, 2023 hearing that there were no outstanding final forfeitures against the Bonding Company. But the State later introduced proof that, at the time of that hearing, the Bonding Company had an outstanding

final forfeiture of fifteen thousand dollars in Bradley County, the Tenth Judicial District, which was served on the Bonding Company on October 24, 2023, and remained unpaid as of March 7, 2024. Regarding its forfeitures in the Tenth Judicial District, the Bonding Company indicated that it was awaiting a letter from the trial judge in that district explaining the circumstances surrounding this situation and that Mr. Holmes was unaware of the forfeitures at the time of his testimony. However, no such letter is included in the record on appeal, and it has never been produced in any fashion. *See In re Tennessee Bonding Co.*, 2022 WL 17587864, at *5 (noting that "[n]o party ha[d] sought to supplement the record with post-judgment facts for our consideration in this de novo review showing that" the forfeiture had been satisfied or that other relief had been granted (citing Tenn. R. App. P. 14(a)). Accordingly, the trial court's determination that Mr. Holmes gave untruthful testimony at the November 27, 2023 hearing is objectively supported by the record.

Mr. Cole's and Mr. Holmes's lack of candor with the trial court, as well as their apparent untruthfulness, supports the trial court's denial of approval for bonding privileges. *See In re Sparta Bail Bonds*, No. M2012-02619-CCA-R3-CO, 2013 WL 6055244, at *3 (Tenn. Crim. App. Nov. 18, 2013) (affirming that former employee was not qualified to serve as a bonding company owner because the trial court reasonably questioned whether the petition was an attempt by the former employee to circumvent the prior order revoking the old company's bonding privileges); *Izevbizuaiyamu v. State*, No. W2012-00017-CCA-R3-CD, 2012 WL 6115092, at *5-6 (Tenn. Crim. App. Dec. 10, 2012) (concluding that, while the appellant met the statutory requirements for a bonding company owner, the trial court was justified in denying her petition to obtain bonding privileges based upon her lack of candor and apparent untruthfulness). Although the Bonding Company attempts to minimize its intent in making these statements to the trial court, certainly this is a situation where a prudent, truthful person would err on the side of caution and fully disclose the information to the trial court.

"So long as the bondsman complies with the [relevant] statutes . . . and meets a fair and reasonable standard in the conduct of his business before these courts then there is no one going to prevent him from practicing his profession therein." *Taylor*, 334 S.W.2d at 737. We cannot say the Bonding Company's business conduct, as evidenced in the record before us, meets this fair and reasonable standard.

According to Ms. Mooney, she reached out to other court clerks and learned that the Bonding Company's "privileges had been suspended in about seven judicial districts." Ms. Mooney confirmed that she had received orders from all seven districts and that some of those orders had been entered into evidence. Orders reflecting suspensions for various behaviors, either temporary or permanent, were entered into evidence from the Tenth,

Twenty-Third, Twenty-Fourth, and Thirty-Second Judicial Districts. As of March 2024, the Bonding Company's privileges remained suspended in the Tenth and Twenty-Third Judicial Districts. Ms. Mooney also testified that she learned that the Seventeenth Judicial District had denied the Bonding Company's request to write bonds.

The Dickson County Circuit Court previously observed that the proof before it demonstrated a lack of attention by the Bonding Company "to its business activities[,]" a problem which apparently continues to occur. If any of these outstanding issues have been resolved, as the Bonding Company claims, then the Bonding Company should have exercised reasonable diligence by presenting evidence of those resolutions beyond the mere assertions of its counsel, which it, thus far, has failed to do. Moreover, this court on appeal has previously agreed that it was objectively reasonable for the trial court to determine that Mr. Holmes had testified falsely in the proceedings in the Twenty-Third Judicial District regarding statements contained in the Bonding Company's semiannual reports. *See In Re Tennessee Bonding Co.*, 2022 WL 1758764, at *6-7.

Finally, the Bonding Company has failed to comply with Local Rule 6 of the Twenty-Sixth Judicial District, requiring all new bonding companies to "have a letter of good standing from all the surrounding counties," and for the letter to inform the clerk's office if the new bonding company has any outstanding conditional or final forfeitures and if their bonding privileges have been suspended. This clearly was not done in this case. And documents from the Tennessee Secretary of State, as testified to by Ms. Mooney, indicated that the Bonding Company was writing bonds throughout the state using eight different names, which, according to the trial court, made it difficult to regulate. It also appears that Local Rule 10, which requires that "a bondsman or agent can only have a financial interest in one bonding company[,]" was not complied with in this case. *See also In re Lewis Bonding Co.*, No. W2016-02171-CCA-R3-CD, 2017 WL 2211396, at *3 (Tenn. Crim. App. May 19, 2017) (concluding that the plain language of the local rules adopted by the Twenty-Sixth Judicial District requiring bail bonding companies to post cash collateral in the clerk's office, and which did not include a provision allowing for the posting of unencumbered real property instead, was properly within the province of the trial court).

For all of these reasons, the evidence supports the trial court's order denying the Bonding Company's petitions to write bail bonds in its district.[5] To hold otherwise, under these circumstances, would usurp the Twenty-Sixth Judicial District's inherent authority to regulate bonding matters within its jurisdiction.

---

[5] We note that the Bonding Company makes no separate argument on appeal regarding the trial court's denial of Ms. Cerniglia's petition.

## III. CONCLUSION

Based upon the foregoing and consideration of the record as a whole, we affirm the judgment of the trial court.

 s/ Kyle A. Hixson    
KYLE A. HIXSON, JUDGE